**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **ERICH WOLF AND AIMEE WOLF** | : | **CIVIL ACTION NO. 2:22-CV-2225** |
| **VERSUS** | : | **JUDGE:** _____ |
| **STATE FARM FIRE AND CASUALTY COMPANY** | : | **MAGISTRATE JUDGE:** _____ |

## **COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, comes **ERICH WOLF** and **AIMEE WOLF** (hereinafter "Wolfs" or "Petitioners"), domiciled in Calcasieu Parish, Louisiana, who respectfully state that:

1.

Defendant herein is **STATE FARM FIRE AND CASUALTY COMPANY**, hereinafter referred to at times as "**STATE FARM**," a foreign insurance company authorized to do and doing business in the Parish of Calcasieu, State of Louisiana.

2.

**STATE FARM** insured the **WOLFS'** home. The homeowner's insurance contract between **STATE FARM** and the **WOLFS** is contained in Policy Number: 18-EA-9471-3.

3.

The **WOLFS** timely paid all annual premiums required and Policy Number: 18-EA-9471-3, which was in full force and effect on August 27, 2020.

4.

The insurance contract required **STATE FARM** to pay the **WOLFS** the replacement cost of all wind damage caused to their home by Hurricane Laura.

5.

Hurricane Laura and its aftermath caused significant damage to Petitioners' home at 1808 W. Dumbarton Drive, Lake Charles, Louisiana 70605. Unfortunately, **STATE FARM's** bad faith handling of their claim has caused the **WOLFS** to file this lawsuit to force the insurance company to abide by its contract and Louisiana law.

6.

On August 25, 2020, Hurricane Laura entered the Gulf of Mexico and began to intensify. By the evening of August 26, 2020, Hurricane Laura was designated a Category 4 hurricane after completing a process known as "rapid intensification." The storm made landfall at Cameron, Louisiana with sustained winds of 150 mph and a minimum central pressure of 938 millibars.

7.

Widely known publicly available information, namely well-established ratings relied upon by the National Oceanic and Atmospheric Administration's National Hurricane Center, describes the expected damage from a Category 4 Hurricane. **STATE FARM** knew well before landfall exactly what type of damage to expect from a storm of this severity:

> Well-built framed homes can sustain severe damage with loss of most of the roof structure and/or some exterior walls. Most trees will be snapped or uprooted and power poles downed. Fallen trees and power poles will isolate residential areas. Power outages will last weeks to possibly months. Most of the area will be uninhabitable for weeks or months. *Saffir-Simpson Hurricane Wind Scale.*

8.

Unfortunately, Hurricane Laura experienced little to no weakening prior to landfall making it the strongest hurricane to affect Southwest Louisiana in recorded history. As expected, wind damage in Calcasieu Parish was catastrophic.

9.

The available data confirmed Hurricane Laura was a catastrophic storm. The National Weather Service office in Lake Charles, Louisiana recorded the highest wind gust in station history at 133 mph. There can be no reasonable dispute that the wind speeds exceeded this station record because the wind equipment used to record it failed shortly after the measurement was recorded. Further, the station deployed the Automated Surface Observing System, which is the most reliable and accurate sensor used to obtain barometric pressure readings. Barometric pressure readings are widely accepted as a key indicator of the strength of a hurricane. Barometric pressure directly influences wind because air flows from areas of high to low pressure. The eye of Hurricane Laura is believed to have passed nearly directly over the station when it recorded a station record minimum sea level pressure of 956 millibars. It is widely known and accepted that the areas impacted by the eye of a hurricane experience the highest winds and the most catastrophic damage.

10.

As residents of Southwest Louisiana are very aware, the aftermath of the storm can also be devastating. The damage wrought by Hurricane Laura left most homes and businesses exposed to rain and humidity. On August 28, 2020, before most residents had an opportunity to return and assess damage, much less begin temporary repairs, torrential rains inundated many homes and businesses, including the insured premises, because of damaged roofs, windows, doors, etc.

11.

Hurricane Laura caused significant damage to Petitioners' home, including its structure and contents, rendering the home uninhabitable.

12.

**STATE FARM** was timely notified of the loss. A **STATE FARM** adjuster inspected the **WOLFS'** home to inspect the damage and estimate the repair/replacement cost. This inspection constituted satisfactory proof of loss sufficient to provide **STATE FARM** with actual knowledge of the scope and extent of the damage to the **WOLFS'** home. However, the **STATE FARM** estimate of dwelling damage totaled only $1,181.67, an amount shockingly inadequate and which failed to include the observable damage to the property.

13.

Petitioners retained a licensed structural engineer to inspect their home. The structural engineer determined that Petitioners' home sustained significant hurricane damage. The engineer's findings were provided to **STATE FARM** and constituted satisfactory proof of loss.

14.

Due to **STATE FARM's** bad faith claim handling and unnecessary delays, the **WOLFS'** home sustained microbial growth requiring abatement, resulting in additional special damages to the **WOLFS**.

15.

Petitioners retained an independent adjuster to determine the cost to repair their home to its pre-hurricane condition. The adjuster will testify that the scope of observable damage totals $1,376,050.77. The adjuster's estimate was submitted to **STATE FARM** and constituted satisfactory proof of loss.

16.

**STATE FARM's** refusal to timely issue payment after receipt of satisfactory proof was arbitrary, capricious and without probable cause.

17.

Additionally, the insurance contract required **STATE FARM** to pay the **WOLFS** for additional living expenses and personal property, which losses **STATE FARM** failed to timely pay following receipt of satisfactory proof of loss.

18.

**STATE FARM** has violated Louisiana law, specifically, LSA-R.S. 22:1892 and LSA-R.S. 22:1973. **STATE FARM's** denial of this claim, late payments, and breach of the duty to their insured of good faith and fair dealing is in violation of its statutory obligations to its insured. **STATE FARM** is liable for all damages suffered by **ERICH WOLF** and **AIMEE WOLF** as a result of the arbitrary and capricious conduct of **STATE FARM**, and Petitioners are entitled to recover for the following items of damage(s):

    a. Past, present, and future mental anguish, pain, and inconvenience;

    b. the cost of repairs and/or replacement of Petitioners' damaged Property;

    c. additional living expenses;

    d. personal property;

    e. general and special damages;

    f. attorney fees, penalties, and costs; and

    g. legal interest.

19.

At least one of the individual Petitioner's cause of action stated herein against the current Defendant exceeds fifty thousand dollars exclusive of interest and costs, and the damages are legally sufficient for federal court jurisdiction.

**WHEREFORE**, the premises considered, Petitioner prays that:

I. Defendant **STATE FARM FIRE AND CASUALTY COMPANY** be served with a copy of this petition and be duly cited to appear and answer same;

II. After due proceedings had, there be judgment herein in favor of Petitioners **ERICH WOLF** and **AIMEE WOLF** and against the Defendant **STATE FARM FIRE AND CASUALTY COMPANY** for such sums as may be reasonable under the circumstances of this case, together with legal interest thereon from the date of judicial demand, until paid, and all costs of these proceedings; together with penalties and attorneys' fees as provided by law; and

III. Petitioners be granted all further and different relief as the facts, law, and equity of this case require.

RESPECTFULLY SUBMITTED BY
BROUSSARD & WILLIAMSON
*Attorneys for Petitioners*

*/s/Michael J. Williamson*
MICHAEL WILLIAMSON (#31004)
RACHEL K. COUVILLION (#33927)

**BROUSSARD + WILLIAMSON**

1301 Common Street
Lake Charles, LA 70601
(337) 439-2450 Telephone
(337) 439-3450 Facsimile
Mike@BWTrialLawyers.com
RachelC@BWTriallawyers.com

**SERVICE INSTRUCTIONS:**

**STATE FARM FIRE AND CASUALTY COMPANY**
*Through its registered agent,*
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809