UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ERICH WOLF ET AL** | **CASE NO. 2:22-CV-02225** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM FIRE & CASUALTY CO** | **MAGISTRATE JUDGE LEBLANC** |

### MEMORANDUM ORDER

Before the court is a Motion in Limine [doc. 48] filed by defendant State Farm Fire & Casualty Company, seeking to exclude or limit testimony of plaintiffs' expert Matthew Phelps. Plaintiffs oppose the motion. Doc. 74.

### I.
#### BACKGROUND

This suit arises from damage to plaintiffs' home in Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020. At all relevant times the home was insured under a policy issued by State Farm. Doc. 26, att. 11. Plaintiffs allege that State Farm failed to timely or adequately compensate them for covered losses. They filed suit in this court on July 25, 2022, raising claims of breach of contract and bad faith. Doc. 1. The matter is set for jury trial before the undersigned on April 29, 2024.

State Farm now moves to exclude or limit the testimony of Matthew Phelps, who has been offered as an expert in forensic engineering. Specifically, State Farm alleges that (1) Phelps failed to consult the applicable building code for plaintiffs' home in conducting his assessment and (2) his testing of plaintiffs' windows was not in line with industry

standards and flawed based on his incorrect assumptions on the age of the windows. Accordingly, it asserts that his testimony does not meet the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiffs oppose the motion, pointing out that both Phelps and State Farm's engineer relied on different building codes than the ones actually in effect when plaintiffs' home was constructed. They also maintain that any challenges to the methodology on Phelps's window evaluation go to the weight rather than admissibility of his testimony.

## II.
## LAW & APPLICATION

### A. Legal Standard

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[1] The proponent of the expert testimony

---

[1] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

B. **Application**

Phelps was informed that the Wolfs' home was constructed around 1985. Accordingly, he used the 1985 Uniform Building Code ("1985 UBC") in his assessment. Doc. 48, att. 3, p. 54. He failed to determine which building code was in effect in Calcasieu Parish at that time. State Farm's expert, Nick Innocenzi, relied on the 1979 Standard Building Code ("1979 SBC"), which State Farm maintains was more likely in effect at the time the Wolfs' house was built. Doc. 74, att. 5, p. 32. Plaintiffs show that the 1982 UBC was adopted by Calcasieu Parish and in effect as of 1985. *See* doc. 74, att. 1. Accordingly, neither expert used the correct building code in his assessment. State Farm maintains that

this fact is immaterial, however, because the 1979 SBC and 1982 UBC are both based on three-second gusts of 150 mph, faster than the 110 mph figure used by the 1985 UBC.[2]

"Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, LLC*, 547 F. App'x 513, 515 (5th Cir. 2013). At present, the court has only the word of State Farm's expert as to the meaning of the building code wind speed figures and their implications for Phelps's assessment. Additionally, Phelps testified that his assessment took into account not only the building code used by the home builders but also the aging of all building materials. State Farm fails to show any error in this methodology or that the reliance on the wrong building code therein is so egregious as to warrant exclusion.

As for the window testing, State Farm again accuses Phelps of using a flawed methodology because he based his opinion on replacement on the fact that 93 percent of the windows had less than 50 percent of argon gas remaining. State Farm emphasizes that window age is an important factor in predicting argon concentration, and that Phelps erroneously stated that the windows were around 16 years old when they were actually 35 years old. In response, however, Phelps shows that 93 percent of windows at the plaintiffs' residence still failed the argon testing assuming a 35-year age and standard argon

---

[2] The 1979 SBC and 1982 UBC both used 100 mph design wind speeds while the 1985 UBC used 110 mph design wind speeds. State Farm shows that these numbers are misleading, however, and Phelps acknowledged as much in his deposition: the 100 mph figure is the fastest-mile wind speed, converting to three-second gusts (as used by modern building codes) of 150 mph. Doc. 81, att. 3, p. 50. Meanwhile, the 110 mph figure used by Phelps was already converted to three-second gusts. Doc. 48, att. 3, p. 73.

concentration loss over time. Additionally, while State Farm faults Phelps for not accounting for the role of any other storm, State Farm's own engineer also made no such allowance and recommended repair or replacement of several windows based on fogging. Doc. 74, att. 4. Accordingly, State Farm fails to show a basis for exclusion. Its challenges to Phelps's sources and any considerations he failed to make in this area are instead fodder for cross-examination.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Motion in Limine [doc. 48] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 16th day of February, 2024.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE